# IN THE UNITED STATES DISTRICT COURT
# OF RHODE ISLAND

| | |
|---|---|
| ITALIA COTUGNO, ADMINISTRATRIX OF THE ESTATE OF AAF AND AND ITALIA COTUGNO, IN HER OWN RIGHT | CIVIL ACTION NO.: |
| Plaintiffs | |
| VS. | |
| THE BOPPY COMPANY, LLC, ARTSANA U.S.A., INC. D/B/A CHICCO, ARTSANA S.P.A. D/B/A ARTSANA GROUP | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs through counsel, Edward R. McCormick, III, Esquire and Stampone O'Brien Dilsheimer (*Pro Hac Vice* application to follow) allege on personal knowledge as to their own acts and on information and belief based on investigation as to all other allegations against The Boppy Company, LLC, Artsana U.S.A., Inc. d/b/a Chicco, Artsana S.p.A. d/b/a Artsana Group as follows:

## PRELIMINARY STATEMENT

1. This is a wrongful death action arising from the entirely avoidable death of then three-month-old (AAF or Decedent), who suffocated in a pillow-like product known as the Boppy Preferred New Born Lounger ("Boppy Lounger") designed, manufactured, marketed, advertised, and sold by The Boppy Company, LLC (Boppy), Artsana U.S.A., Inc. d/b/a Chicco (Chicco), Artsana S.p.A. d/b/a Artsana Group (Artsana Group) (collectively, the Boppy Defendants).

2. The design of the Boppy Lounger rendered it defective. The lack of adequate warnings accompanying the Boppy Lounger rendered it defective. Boppy failed in its acts and omissions related to the Boppy Lounger to use reasonable care to avoid injuring AAF and Plaintiffs. Boppy breached implied and express warranties made about the Boppy Lounger. The defective nature of the Boppy Lounger and the Boppy Defendants' negligent conduct and breach of warranties proximately caused AAF's horrific suffering and death by suffocation and caused Plaintiffs to sustain pecuniary loss, including funeral expenses and burial expenses for her daughter AAF, as well as loss of consortium, companionship, comfort, guidance, and counsel of her daughter AAF.

## THE PARTIES

3. Plaintiff Italia Cotugno is the Administratrix of the Estate of AAF.

4. Plaintiff Italia Cotugno is the parent of AAF.

5. Plaintiff is domiciled in Rhode Island and are citizens of Rhode Island.

6. Defendant The Boppy Company, LLC, is a limited liability company organized under the laws of Colorado. The Boppy Company, LLC, is a citizen of Italy because it is a limited liability company whose sole member, Artsana S.p.A., is an Italian corporation with its principal place of business in Italy. All acts and omissions of Boppy described in this Complaint were done by its agents, servants, employees, and/or owners acting in the course and scope of their respective agencies, services, employments, and/or ownership.

7.      Defendant, Artsana U.S.A., Inc. d/b/a Chicco, is a corporation organized and operating under the laws of the State of New Jersey, with a principal place of business at 1826 William Penn Way, Lancaster, PA 17601. Chico is a citizen of Pennsylvania and New Jersey. All acts and omissions of Chicco described in this Complaint were done by its agents, servants, employees, and/or owners acting in the course and scope of their respective agencies, services, employments, and/or ownership.

8.      Defendant, Artsana S.p.A. d/b/a Artsana Group, is a corporation and/or other jural entity duly incorporated, organized, and operating under the laws of Italy, with a principal place of business at Via Saldarini Catelli 1 22070 Grandate (CO), Italy. Artsana Group is a citizen of Italy. All acts and omissions of Artsana Group described in this Complaint were done by its agents, servants, employees, and/or owners acting in the course and scope of their respective agencies, services, employments, and/or ownership.

9.      At all relevant times, the Boppy Defendants were the employees, agents, brokers, servants, alter egos and/or instrumentalities of one another and acted and/or failed to act through their employees, agents, brokers, servants, alter egos and/or instrumentalities, each and all of whom were acting within the scope of their authority, relating to the manufacture, design, marketing, and/or sale of the Boppy Lounger. The identities of these employees, agents, brokers, servants, alter egos and/or instrumentalities, are known to the Boppy Defendants herein and currently

unknown to Plaintiffs, and include personnel responsible for the manufacture, design, and/or sale of the Boppy Lounger.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest.

11. This Court may exercise personal jurisdiction over the Boppy Defendants because they have minimum contacts with Rode Island such that the maintenance of the suit does not offend traditional notions of fair play and substantial. The Boppy Defendants marketed, promoted, advertised, sold, and distributed the Boppy Lounger in Rhode Island and put the Boppy Lounger into the stream of commerce knowing and intending that it would enter Rhode Island and be used in Rhode Island. Plaintiffs' claims arise out of or relate to the Boppy Defendants' purposeful contacts with Rhode Island.

12. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

13. The Boppy Defendants designed, manufactured, marketed, and sold the Boppy Lounger from 2015 or sooner until 2021.

14. The Boppy Defendants marketed, advertised, and sold the Boppy Lounger as a product that infants could be placed in safely when the Boppy Defendants knew or should have known that placing infants in the Boppy Lounger could cause infants to suffer catastrophic injuries and death.

15. Before and during their sale and marketing of the Boppy Lounger, the Boppy

4

Defendants knew or should have known that the defective and unreasonably dangerous design of the Boppy Lounger could cause infants to suffocate because of the padding, angles, and positions of the Boppy Lounger caused infants' airways to be blocked; caused infants to be lying at a dangerous angle in the Boppy Lounger; caused infants to assume positions that increase the risk of suffocation and death; and, caused infants to become stuck in positions in which they were unable to breathe.

16.     Defects in the Boppy Lounger presented an unreasonably, inherently, and unavoidably dangerous suffocation hazard.

17.     Infants could roll or move on the Boppy Lounger into a position where their nose and mouth could be obstructed by the Boppy Lounger.

18.     Infants could roll or move off the Boppy Lounger into a position where their nose and mouth could be obstructed by another object.

19.     The Boppy Lounger could cause airflow obstruction if an infant rolled or moved. The Boppy Lounger did not contain any straps or other restraining device to prevent, or otherwise reduce the risk of, an infant rolling or moving into a position that could cause airflow obstruction.

20.     The Boppy Lounger was constructed of thick, soft padding that had a concave shape which could envelop an infant's face and cause airflow obstruction if an infant rolled or moved into a position where the infant's nose and/ or mouth were obstructed by the Boppy Lounger.

21.     The Boppy Lounger facilitated an infant's movement, and the structure and shape of the Boppy Lounger enhanced the risk that the infant's nose and mouth would be obstructed by the Boppy Lounger. The Boppy Lounger facilitated an infant's movement off the Boppy Lounger, enhancing the risk that the infant's nose and mouth could be obstructed by another object in the infant's environment.

22.     The design of the Boppy Lounger allowed infants to bend their knees and push off

the raised edges of the Boppy Lounger with their feet, allowing the infant to roll or move on (or off of) the Boppy Lounger.

23. The design of the Boppy Lounger could also lead to bedsharing where the infant sleeps in an adult bed with one or more adult caregivers. In particular, the Boppy Lounger was attractive to caregivers who wished to bedshare with an infant because it was soft and portable, and caregivers may have believed that the product's high sides would act as a sufficient barrier between the adult and the infant to keep the infant secure in the Boppy Lounger. This could result in an infant moving into a compromised position within the Boppy Lounger and suffocating or moving outside the Boppy Lounger and suffocating on another object, such as soft bedding.

24. The Boppy Defendants' manual and website acknowledge the risk of severe injury of death to infants placed to lay in the Boppy Lounger through asphyxiation, but they proceeded to market and sell the Boppy Lounger anyway and continued to do so even after learning of infant injuries and deaths caused by the product.

25. Boppy admitted that "[i]nfants can suffocate if they roll, move, or are placed on the lounger in a position that obstructs breathing, or roll off the [Boppy Lounger] onto an external surface, such as an adult pillow or soft bedding, that obstructs breathing."

26. Between December 2015 and June 2020, there were eight reports of infant deaths associated with the Boppy Lounger.

27. In September 2021, the U.S. Consumer Product Safety Commission (CPSC) and Boppy announced the recall of the Boppy Lounger.

28. According to the CPSC, the Boppy Lounger was hazardous in that infants could suffocate if they rolled, moved, or were placed on the Boppy Lounger in a position that obstructs

breathing, or rolled off the Boppy Lounger onto an external surface, such as an adult pillow or soft bedding that obstructs breathing.

29. On January 28, 2021 AAF was a four-month-old female infant.

30. On January 28, 2021 AAF. was in the care and under the supervision of her mother, Italia Cotugno.

31. On January 28, 2021 Italia Cotugno placed AAF on the Boppy Lounger.

32. On January 28, 2021 AAF suffocated to death while on or having rolled off of the Boppy Lounger.

## CAUSES OF ACTION

### COUNT 1
### WRONGFUL DEATH – STRICT LIABILITY DESIGN DEFECT AGAINST THE BOPPY DEFENDANTS

33. Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

34. The Boppy Defendants designed, manufactured, marketed, and sold the Boppy Lounger in the ordinary course of their business.

35. The Boppy Lounger was unreasonably dangerous when it left the control of the Boppy Defendants and at the time of sale when used as reasonably anticipated.

36. The Boppy Lounger was defective in design because infants could roll or move on the Boppy Lounger into a position where their nose and mouth would be obstructed by the lounger and/ or infants could roll or move off the lounger into a position where their nose and mouth would be obstructed by another object.

37. The Boppy Lounger was defective in design because the Boppy Lounger could cause airflow obstruction if an infant rolled or moved. The Boppy Lounger did not contain any straps or

7

other restraining device to prevent, or otherwise reduce the risk of, an infant rolling or moving into a position that could cause airflow obstruction.

38. The Boppy Lounger was defective in design because the Boppy Lounger was constructed of thick, soft padding that had a concave shape which could envelop an infant's face and cause airflow obstruction if an infant rolled or moved into a position where the infant's nose and/ or mouth were obstructed by the lounger.

39. The Boppy Lounger was defective in design because the Boppy Lounger facilitated an infant's movement, and the structure and shape of the lounger enhanced the risk that the infant's nose and mouth would be obstructed by the lounger.

40. The Boppy Lounger was defective in design because the Boppy Lounger facilitated an infant's movement off the Boppy Lounger, enhancing the risk that the infant's nose and mouth would be obstructed by another object in the infant's environment.

41. The Boppy Lounger was used in a manner that was reasonably anticipated by Boppy. That is, the Bobby Lounger was used for the purpose of holding AAF. In 2021, the Acting Chairmen of the CPSC stated: "[W]e know that infants sleep so much of the time – even in products not intended for sleep – and since suffocation can happen so quickly, these Boppy lounger products are simply too risky to remain on the market."

42. As a direct, foreseeable, and proximate result of the design of the Boppy Lounger, AAF. suffered an excruciating death by suffocation and experienced pain and suffering as well as pecuniary losses, including medical bills.

43. As a direct, foreseeable, and proximate result of the design of the Boppy Lounger, Plaintiffs suffered pecuniary losses, including funeral, burial, and medical expenses, as well as loss of consortium, companionship, comfort, guidance, and counsel of AAF.

44. The Boppy Defendants designed the Boppy Lounger in a manner that created a suffocation risk. The Boppy Defendants designed the Boppy Lounger in this manner to save the few dollars or cents per unit it would have taken to render the Boppy Lounger reasonably safe. In so doing, the Boppy Defendants showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of an infant by suffocation. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

## COUNT 2
## WRONGFUL DEATH – STRICT LIABILITY FAILURE TO WARN AGAINST THE BOPPY DEFENDANTS

45. Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

46. The Boppy Defendants designed, manufactured, marketed, and sold the Boppy Lounger in the ordinary course of their business.

47. The Boppy Lounger was unreasonably dangerous when it left the control of the Boppy Defendants and at the time of sale when used as reasonably anticipated.

48. Boppy did not give adequate warnings of the danger of suffocation presented by the Boppy Lounger.

49. The Bobby Lounger was used by Italia Cotugno and by AAF in a manner that was reasonably anticipated by The Boppy Defendants.

50. As a direct, foreseeable, and proximate result of the inadequate warnings, AAF suffered an excruciating death by suffocation and experienced pain and suffering as well as pecuniary losses, including medical bills.

51. As a direct, foreseeable, and proximate result of the inadequate warnings, Plaintiffs

suffered pecuniary losses, including funeral, burial, and medical expenses, as well as loss of consortium, companionship, comfort, guidance, and counsel of AAF

52. The Boppy Defendants failed to adequately warn foreseeable users of the defects in the Boppy Lounger that created a risk of suffocation. In so doing, the Boppy Defendants showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of an infant by suffocation. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

**COUNT 3**
**WRONGFUL DEATH – NEGLIGENCE AGAINST THE BOPPY DEFENDANTS**

53. Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

54. At all times material hereto, the Boppy Defendants had a duty to foreseeable users of the Boppy Lounger, including AAF, her parents to exercise reasonable care in the design, manufacture, testing, inspection, advertising, marketing, distribution, and sale of the Boppy Lounger.

55. The Boppy Defendants had a further duty to provide adequate and sufficient instructions concerning the proper use of the Boppy Lounger, as well as warnings of the risks and dangers associated with using the Boppy Lounger, to AAF's parents and to other foreseeable users of the Boppy Lounger.

56. The Boppy Defendants negligently designed the Boppy Lounger such that it had the defects described above.

57. The Boppy Defendants negligently failed to adequately warn that the Boppy Lounger created a suffocation risk to infants placed on the Boppy Lounger.

58. The Boppy Defendants were engaged in negligent conduct in the design, manufacture, sale, and marketing of the Boppy Lounger. The negligent conduct of the Boppy Defendants includes, but is not limited to, the following:

    a. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to asphyxiate and/or suffocate;

    b. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to die;

    c. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to suffer serious injuries, including brain damage;

    d. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device at an angle that causes an infant's airway to be obstructed or blocked;

    e. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with a defective shape and design that causes an infant in the device to assume positions that led to suffocation, asphyxiation, and/or death of the infant;

    f. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger with an inadequate and/or unsafe restraint system that causes an infant in the device to suffocate and/or asphyxiate;

    g. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with a defective shape and design that utilizes fabric, cloth, and/or material that is unreasonably dangerous and/or unsafe, in that the fabric, cloth, and/or material causes infants to suffocate or asphyxiate and/or fails to provide an infant the ability to adequately breathe when the

11

infant's face comes into contact with the cloth, fabric, and/or material;

  h. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device capable of causing infants who were placed in the Boppy Lounger device to suffer from injuries, deformities, and disfigurement, including, brain damage, developmental delays, and cognitive delays;

  i. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device that contains parts and materials that cause an infant in the device to suffocate, asphyxiate, suffer injury, and/or die;

  j. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device with inadequate and/or defective safety devices and measures;

  k. Designing and/or manufacturing and/or selling and/or assembling a defective Boppy Lounger device despite the fact that the defective and dangerous design, shape, and makeup of the device causes infants sleeping in it to suffocate, asphyxiate, sustain injury, and/or die;

  l. Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer asphyxiation;

  m. Misrepresenting to the public, customers, and owners of the Boppy Lounger, that the Boppy Lounger was safe for infants to lie in;

  n. Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer suffocation;

  o. Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer SIDS;

  p. Failing to perform adequate and proper testing and risk-hazard analysis on the Boppy Lounger device in order to ensure it was safe for use before selling it;

q. Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer death;

r. Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer injuries;

s. Failing to warn that the design, makeup, shape, and/or angle of the Boppy Lounger can cause an infant to suffer brain damage and/or brain injury;

t. Failing to timely recall the Boppy Lounger;

u. Failure to warn that the Defendants knew that the Boppy Lounger device was associated with numerous injuries and death suffered by numerous infants;

v. Failure to seek appropriate and adequate guidance, advice, and input from all applicable professionals, including medical doctors, engineers, and medical professionals, in the Defendants' pre-sale design and marketing of the Boppy Lounger device in order to ensure the design, makeup, shape, and/or angle of the Boppy Lounger device was safe and not defective prior to marketing and selling it;

w. Continuing to market and sell the Boppy Lounger despite being notified by numerous individuals and organizations, including parents, customers, governmental agencies, medical doctors, and medical groups or organizations, that the Boppy Lounger device was unsafe, defective, and had caused deaths and injuries to numerous infants who were placed in the Boppy Lounger device;

x. Continuing to market and sell the Boppy Lounger despite knowing that the defective design of the Boppy Lounger had caused or contributed to the deaths and injuries of numerous infants;

y. Failing to issue post-sale warnings regarding the dangers and safety hazards

13

associated with the Boppy Lounger; and

  z.  Failing to issue adequate post-sale warnings regarding the dangers and safety hazards associated with the Boppy Lounger.

  59.  As a direct, foreseeable, and proximate result of the Boppy Defendants' negligence, AAF. suffered an excruciating death by suffocation and experienced pain and suffering as well as pecuniary losses, including medical bills.

  60.  As a direct, foreseeable, and proximate result of the Boppy Defendants' negligence, Plaintiffs suffered pecuniary losses, including funeral, burial, and medical expenses, as well as loss of consortium, companionship, comfort, guidance, and counsel of AAF

  61.  The Boppy Defendants acted in a negligent manner simply to save the few dollars or cents per unit it would have taken to render the Boppy Lounger reasonably safe. In so doing, the Boppy Defendants showed complete indifference to or conscious disregard for the safety of others, including AAF, and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct was death of an infant by suffocation. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

**COUNT 4**
**WRONGFUL DEATH – BREACH OF EXPRESS WARRANTY AGAINST THE BOPPY DEFENDANTS**

  62.  Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

  63.  The Boppy Defendants designed, manufactured, marketed, and sold the Boppy Lounger in the ordinary course of their business.

  64.  The Boppy Defendants expressly warranted that the Boppy Lounger was free from material defects.

65. This express warranty was a material factor inducing Rebecca Smith to purchase the Boppy Lounger.

66. The Boppy Lounger did not conform to this express warranty because the Boppy Lounger had material defects, including those described above.

67. As a direct, foreseeable, and proximate result of the nonconformity to the express warranty, AAF. suffered an excruciating death by suffocation and experienced pain and suffering as well as pecuniary losses, including medical bills.

68. As a direct, foreseeable, and proximate result of the nonconformity to the express warranty, Plaintiffs suffered pecuniary losses, including funeral, burial, and medical expenses, as well as loss of consortium, companionship, comfort, guidance, and counsel of AAF.

69. The Boppy Defendants, by warranting that the Boppy Lounger was free from material defects, while knowing of the defects in the Boppy Lounger, showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of an infant by suffocation. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

**COUNT 5**
**WRONGFUL DEATH – BREACH OF IMPLIED WARRANTY AGAINST THE BOPPY DEFENDANTS**

70. Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

71. The Boppy Defendants designed, manufactured, marketed, and sold the Boppy Lounger in the ordinary course of their business.

72. The Boppy Lounger was not merchantable at the time of the sale because it

had the defects described above.

73. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, AAF suffered an excruciating death by suffocation and experienced pain and suffering as well as pecuniary losses, including medical bills.

74. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, Plaintiffs suffered pecuniary losses, including funeral, burial, and medical expenses, as well as loss of consortium, companionship, comfort, guidance, and counsel of AAF

75. The Boppy Defendants, by warranting that the Boppy Lounger was merchantable while knowing of the defects described above showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of an infant by suffocation. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

## COUNT 6
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST THE BOPPY DEFENDANTS

76. Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

77. From the moment Defendant released their product into commerce, it was entirely foreseeable that the products would cause infants to die.

78. Shortly after Defendant released their product into commerce, they had already been both directly and constructively informed of adverse events, complaints, concerns of the chin-to-chest position, concerns of positional asphyxia, and other safety related complaint with the use of their Boppy Loungers and with the use of other inclined sleepers.

79. Due to Defendant's conduct, the Plaintiff had to witness her infant child laying unresponsive in the subject Boppy Lounger.

80. Due to Defendant's conduct, the Plaintiff had to witness paramedics work furiously to attempt bringing her infant child back to life.

81. Due to Defendant's conduct, the Plaintiff had to personally endure the horrible news that her infant child was dead.

82. Due to Defendant's conduct, the Plaintiff had to personally endure the additional emotional distress that comes with learning of the loss of a beloved relative, especially one as young as AAF.

83. Defendant's conduct prior to the death of the Decedent was a substantial, direct, and proximate cause of the severe emotional trauma, suffering, horror, grief, and shock the Plaintiffs had to endure, the likes with which no reasonable person could cope.

84. As a direct and proximate result of Defendant's conduct, including actions, omissions and misrepresentations, Plaintiff sustained both economic and non-economic damages including but not limited to physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life.

## COUNT 7
## LOSS OF SOCIETY AND COMPANIONSHIP - AGAINST THE BOPPY DEFENDANTS

85. Plaintiffs repeat and reallege the allegations contained in preceding and subsequent paragraphs, as if fully set forth herein.

86. At all times material hereto, Plaintiff Italia Cotugno is the natural parent of Plaintiff's decedent AAF.

87. As a result of the injuries and death of AAF, Plaintiff Italia Cotugno has and will in the future suffer the loss and deprivations of the society and companionship of her unemancipated child, AAF.

## JURY DEMAND

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs pray this Court enter an award for compensatory damages for AAF's excruciating suffering preceding her death by suffocation and other damages and for Plaintiffs' pecuniary losses, including funeral, burial, and medical expenses, as well as loss of consortium, companionship, comfort, guidance, and counsel of AAF, for exemplary damages for aggravating circumstances from The Boppy Defendants, and for such further relief as is proper.

Respectfully submitted,

**McCORMICK LAW OFFICES**

By: /s/ Edward R. McCormick III
EDWARD R. McCORMICK, III, ESQ.
1319 Cranston Street
Cranston, RI 02920
ed@edmccormicklaw.com
(401)351-3441
Fax (401)490-7844

**STAMPONE O'BRIEN DILSHEIMER LAW**
BY:   /s/   Kevin P. O'Brien
KEVIN P. O'BRIEN, ESQUIRE
kobrien@stamponelaw.com
500 Cottman Avenue
Cheltenham, PA 19012
(215)663-0400
*Pro Hac Vice Application to Follow*